UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

MICHAEL H. RYU,                          )
                                         )
      Plaintiff,                    )
v.                                       )   C.A. #1:15-cv-202 (CMH/JFA)
                                         )
WANDA F. BRYANT, *et al.*,               )
                                         )
      Defendant.                    )

_____

MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS
_____

Victor M. Glasberg, #16184
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
(703) 684-1100 / Fax: 703-684-1104
vmg@robinhoodesq.com

Counsel for Plaintiff

## Table of Contents

Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Procedural Note: At Bar Are Summary Judgment Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Preliminary Observation Regarding Bankruptcy Stay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

The Undisputed Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.     Mr. Ryu States Claims Against Defendant Whitten In His Individual Capacity . . . . . . 6

     A.  Mr. Ryu States a Claim under §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

          1.  Mr. Whitten Caused Mr. Ryu to be Unconstitutionally Seized . . . . . . . . . . . . . . 7

          2.  Absolute Immunity Is Not Available To Mr. Whitten . . . . . . . . . . . . . . . . . . . . . 11

               (a) Mr. Whitten is Ineligible for Absolute Immunity . . . . . . . . . . . . . . . . . . . . 12

               (b) Mr. Whitten is Not Entitled to Qualified Immunity . . . . . . . . . . . . . . . . . . . 12

          3.  Qualified Immunity Should Not Be Extended to Mr. Whitten . . . . . . . . . . . . . . 18

     B.  Mr. Ryu States Viable State-Law Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

          1.  Mr. Ryu States Claims for Malicious Prosecution and False Arrest . . . . . . . . . 20

               a)  Malicious Prosecution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

               b)  False Arrest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

          2.  Whether Mr. Whitten is Shielded by Sovereign
             Immunity is At Best A Jury Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

II.    Mr. Ryu Has Stated A §1983 Claim Against Mr. Whitten's
      Clients in The Tax Collection Lawsuit: Ms. Bryant in
      Her Individual Capacity, Warren County, or Both . . . . . . . . . . . . . . . . . . . . . . . . . . 23

A. The Client(s) For Whom Mr. Whitten Acted Share(s) His §1983 Liability ....... 23

B. Mr. Whittten Effectuated The Conceded Policy of His Client(s) ............... 24

Conclusion ............................................................... 25

<u>Exhibits</u>[1]

| | |
|---|---|
| Exhibit 1 | Declaration of Victor M. Glasberg |
| Exhibit 2 | Warrant in Debt (Whitten Ex. 1) |
| Exhibit 3 | CS Properties, Inc. Petition for Bankruptcy (Whitten Ex. 4) |
| Exhibit 4 | Whitten Default Judgment Affidavit (Whitten. Ex. 1) |
| Exhibit 5 | Summons to Answer Debtor Interrogatories (Whitten Ex. 2) |
| Exhibit 6 | Motion for *Capias* (Whitten Ex. 3A) |
| Exhibit 7 | *Capias* for Arrest of Michael Ryu (Whitten Ex. 3B) |
| Exhibit 8 | Affidavit of Wanda F. Bryant (Bryant Ex. A) |
| Exhibit 9 | Declaration of Michael H. Ryu |

---

[1] Except for Exhibits l and 9, all exhibits appear as exhibits to defendants' motions at bar; they are reproduced here for the convenience of the court and counsel.

All defendants have filed motions to dismiss, and plaintiff Michael Ryu responds to their various motions in this single memorandum, as the central arguments to be made in each case are the same, as are the undisputed facts.

## Procedural Note: At Bar Are Summary Judgment Motions

Defendants have submitted affidavits from defendants Daniel Whitten and Wanda Bryant setting forth an abundance of information, beyond the averments in the complaint, of which this court cannot take judicial notice.[2]  Mr. Ryu does not object to the court's considering this new material, but under Fed.R. Civ.P. 12(d) the result is to convert the motions to ones for summary judgment.  The court "need not give formal notice of its intent to treat a motion to dismiss as one made under Rule 56, so long as the parties have sufficient notice that the motion could be so construed," and the referenced notice within Rule 12 is itself sufficient.  *Tuttle v. McHugh*, 457 F. App'x. 234, 235 (4th Cir. 2011),  (quoting *Laughlin v. Metro. Washington Airports Auth*., 149 F.3d 253, 261 (4th Cir. 1998); *see also, Gassner v. County of Dinwiddie,* 162 F.R.D. 280 (E.D. Va. 1995), *aff'd*, 103 F.3d 351 (4th Cir. 1996); *Gay v. Wall*, 761 F.2d 175 (4th Cir. 1985).

Under Rule 12(d) the court must provide "a reasonable opportunity to present all the material that is pertinent to the motion," *i.e.,* deny the motion without prejudice and permit

---

[2]Defendants correctly point out that the court can take judicial notice of certain public records and pleadings in other cases when adjudicating a motion under Rule 12(b)(6), and as to these materials, Mr. Ryu poses no procedural objection.  The problem here is with the lengthy and factually dense sworn statement of Daniel Whitten and the shorter affidavit of Wanda Bryant.  These submissions are replete with matters that require proof, *e.g.,*Whitten dec. ¶¶2, 3, 4, 7, 8, 13, 14, 15, 16, 17 18, 19, 20, 21, 22, 23 24; Bryant Aff. ¶¶ 6, 7, 8, 9, 10.

discovery on the matter.[3] This is exactly what the court should do here.

The above stated, and without waiver of his objection to any adjudication predicated on any of defendants' abundant factual averments of which the court cannot take judicial notice, Mr. Ryu addresses defendants' motion on the merits, opposing all defendants' motions to be dismissed from this case.

## Preliminary Observation Regarding Bankruptcy Stay

This case is not in court because the defendants obtained an improper judgment against a party in bankruptcy proceedings, and proceeded in a wrong-headed effort to enforce that judgment.[4] That blunder would be basis for a contempt citation and possible award of damages to the bankrupt in bankruptcy court, *see*, *Skillforce, Inc. v. Hafer*, 509 B.R. 523 (E.D. Va. 2014). But none of this is the gravamen of the instant case. This case is in court because defendants

---

[3] The style of the litigation giving rise to this lawsuit was: "*County of Warren, Virginia, on behalf of Wanda F. Bryant, Treasurer v. CS Inc*. Mr. Ryu contends that Mr. Whitten's client(s) share Mr. Whitten's liability in the matter at hand, and unless defendants (who are represented by different counsel) stipulate as to which is properly to be charged as client, both are presumptively to be charged and discovery is required to resolve the matter. The undersigned is filing herewith a declaration under Rule 56(f) to this effect. Exh. 1.

[4] Whether the judgment was void or voidable is not only inconsequential, but uncertain. This is "an open question in the Fourth Circuit." *Hass v. Duncan*, #105-cv-91 (JCC), 2005 WL 5714293, at *3 (E.D. Va. July 6, 2005). In *Winters v. George Mason Bank,* 94 F.3d 130 (4th Cir. 1996) the court declined to decide the issue because the plaintiff lacked standing to address it. Most circuits deem violations of the stay to yield results that are void*,* as do district courts in Maryland. *In re Lampkin*, 116 B.R. 450, 451 (Bankr. D. Md. 1990); *accord, Ford Motor Credit Co. v. Hemsley* (*In re Bennett* ), 317 B.R. 313, 316 (Bankr.D.Md.2004). Judge Cacheris has held that such actions are voidable. *Khozai v. Resolution Trust Corp*., 177 B.R. 524, 526-27 (E.D.Va.1995). A 2008 West Virginia decision holds that they are void. *Ellison v. C.I.R.*, 385 B.R. 158, 164 (S.D.W. Va. 2008), and bankruptcy courts in South Carolina consistently so hold. *In re Weatherford,* 413 B.R. 273, 283 (Bankr. D.S.C. 2009).

caused a corporate registered agent who is neither officer nor owner nor employee of the corporation, to be arrested for the corporation's default in responding to various notices and orders regarding a corporate debt. Defendants avoid this elephant in the room like the plague. This avoidance dooms their motion, not to say their defense of this case.

## The Undisputed Facts

Defendants' actions are not in dispute. In April, 2013, Mr. Whitten filed a lawsuit in Warren County General District Court for back taxes against CS Property, Inc. ("CS"), a company for which Mr. Ryu was the registered agent. Exh. 2. CS thereafter filed for bankruptcy, and notice thereof was duly given by the bankruptcy court to CS's creditors, including the county and its treasurer. Exh. 3. Mr. Whitten's office also received notice of motions in the bankruptcy court filed by another of CS's creditors, Wells Fargo Bank. Whitten Dec. ¶8.[5]

Notwithstanding the pending bankruptcy and the automatic stay, Mr. Whitten submitted an affidavit to the court seeking entry of a default judgment. Exh. 4. For reasons best known to him, in that affidavit he identified Mr. Ryu as both defendant and registered agent in the case, styling the case as follows: *County of Warren, Va./Treasurer v. Michael Hyukweon Ryu, Reg Agent.*" *Id.* On June 19, 2013, judgment was entered on the warrant in debt.[6] Exh. 2.

---

[5]Confronted with proof positive that his office was aware of the CS bankruptcy, Mr. Whitten now points what seems to be a finger of blame at his former paralegal, aptly named Paula Blamer, Mem. at 9, ¶22, for having, we are advised, kept this documentation separate from his collections file. All this is grist for (at least) discovery.

[6]The judgment was sanctionable. *See, Skillforce, Inc., supra*, and fn. 4, *supra.* This fact is immaterial to this case, which deals with the wrongful arrest of a registered agent.

On January 30, 2014, Mr. Whitten applied for a summons to answer interrogatories in aid of collection of the county's judgment against CS, the defaulting taxpaying company. For reasons known best to him, his application identified Mr. Ryu as "respondent, same as defendant," and the person to be summoned personally to answer the interrogatories. Exh. 5. This repeated misidentification, materially misrepresenting the limited nature of Mr. Ryu's relationship to CS Properties and his role in the case, resulted in issuance of a writ of *fieri facias* issued by the court clerk directing Mr. Ryu to respond to the interrogatories.[7] *Id.*

Mr. Ryu's responsibilities as CS's registered agent were unambiguous: "The sole duty of the registered agent is to forward to the corporation at its last known address any process, notice or demand that is served on the registered agent." *Code of Virginia* §13.1-634(B). Mr. Ryu did as required of him on receipt of the summons in the case *County of Warren/Treasurer v. CS Property Inc.*: he forwarded it to his principals. Complaint ¶18; Exh 9 ¶2. It turned out that CS did not respond to the interrogatories, possibly on the understanding that the underlying judgment, obtained in contempt of the bankruptcy stay, was invalid, or because the summons did not, as required, identify an officer or employee of CS to be served or to appear.

Faced with CS's default in responding to his interrogatories, on April 8, 2014, Mr. Whitten filed a motion seeking a "*Capias* for defendant for failure to appear on 04/02/2014 in Warren Co. General District Court after having been summonsed to answer interrogatories." Exh. 6. Mr. Whitten identified The "Party to be Served" as "Michael Hyunkweon Ryu, Reg.

_____

[7]Defendant Whitten asserts that his office searched the State Corporation Commission website to identify the corporate officers and registered agent for a corporation *before* filing a warrant in debt. Whitten Dec. ¶16. Doing so in this case would have identified Mr. Ryu solely as registered agent. It is a mystery why Whitten professes that he was "unaware" that Ryu was merely the registered agent. Dec. ¶17.

Agent," at his Vienna law office address. The fact that this *capias* was requested in aid of an improperly obtained judgment is material to this case only as an indication of the devil-may-care attitude that permeated the prosecution of the case throughout. The substantive issue – and the offense giving rise to this lawsuit – is that Mr. Whitten successfully sought a *capias* for the arrest of Mr. Ryu, specifically identifying him as the "party" to be taken into custody. Exh. 6. Mr. Ryu has alleged that Mr. Whitten told Mr. Ryu, "We do this all the time." Amended complaint ¶35. This was nonsense, and highly injurious nonsense.

Under Virginia law, a corporate officer or director may serve as a company's registered agent; indeed, a corporation can have a single officer and director. *Code of Va.* §13.1-634(A)(2)(a) & (B). Neither the general district judge who presumably authorized the *capias,* nor the court clerk who actually issued it (*see* Exh. 7), had an obligation to check with the State Corporation Commission or otherwise second-guess the representation of Mr. Whitten, a county attorney who was an officer of the court, as to whether Mr. Ryu was properly to be served with the *capias.* The court thus ordered the arrest of "Ryu, Michael Hyunkweon / Reg Agent," on a finding that he – now transformed into the defendant in the matter – "failed to appear after personal service." Exh. 7; Complaint ¶¶28-31; Exh. 9 ¶3.[8]

---

[8]Whitten repeatedly states that Mr. Ryu was "personally served" with various papers – the warrant in debt, the summons to answer debtor interrogatories, and the *capias*. This repeated turn of phrase, in context, is misleading and mischaracterizes the legal consequences of placing these various documents in the hands of a registered agent. Service of these papers on Mr. Ryu was lawful to the extent he was served in his capacity as registered agent of a corporation. To suggest that "personal service" on a registered agent, *i.e.*, placing the documents directly into the hands of that agent, creates an affirmative obligation on that person to answer the substance of those papers is wrong as a matter of law and would place in legal peril the hundreds, if not thousands of registered agents in this commonwealth. *See* discussion at 10, *infra*.

Shortly thereafter, Mr. Ryu was duly arrested (and handcuffed) during the business day in his Vienna law office. Settlement of this regrettable matter having proved elusive, this lawsuit followed. Complaint ¶32.

## Standard of Review

Given the conversion of their proffered motions to dismiss into motions for summary judgment, defendants must contend with the standards of Rule 56 and demonstrate that with all facts and inferences drawn in favor of Mr. Ryu, no material facts are in dispute and they are entitled to judgment as a matter of law. This they cannot do. Even less can they show that Mr. Ryu has not met the standards of Rule 12(b)(6), requiring that a complaint contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

I. <u>Mr. Ryu States Claim Against Defendant Whitten In His Individual Capacity</u>

    A. <u>Mr. Ryu States a Claim Under §1983</u>

Mr. Ryu claims that Deputy County Attorney Daniel Whitten violated his Fourth Amendment right to be free from unconstitutional seizure of his person by requesting and obtaining a capias for Mr. Ryu's arrest in derogation of black letter Virginia law and in the absence of reason to believe that Mr. Ryu had committed any offense warranting his arrest. Mr. Whitten moves to dismiss, arguing that Mr. Ryu was lawfully arrested, that he (Whitten) is entitled to absolute immunity regardless of his acts, and finally, that he is entitled to qualified immunity for having made what he styles a reasonable mistake. He is wrong on all three counts.

## 1. <u>Mr. Whitten Caused Mr. Ryu to be Unconstitutionally Seized</u>

Mr. Ryu was subjected to an unreasonable and thus unconstitutional seizure of his person when he was wrongfully arrested as a "defendant" on Mr. Whitten's capias for failing to appear to answer CS's interrogatories. The fact that this occurred at the behest of a lawyer, and a government lawyer to boot, makes the matter all the more egregious.

Under black letter Virginia law, a registered agent has no authority to appear in court on behalf of a company to answer debtor's interrogatories addressed to the company. Clear as a matter of common sense, this result is mandated by the restrictive language of *Code of Va.* §13.1-634(B): "The sole duty of the registered agent is to forward to the corporation at its last known address any process, notice or demand that is served on the registered agent." Equally unambiguous, at all relevant times, were the records of the Virginia State Corporation Commission listing Mr. Ryu as registered agent for CS Properties, Inc., not as an officer or director. Complaint ¶10; Exh. 9 ¶4. Apart from a brief period during which he served as bankruptcy counsel for CS, Mr. Ryu has never held any position relative to that company other than being its registered agent. Complaint ¶¶12-13; Exh. 9 ¶4.

Virginia law is equally clear as to who may be summoned to answer debtor's interrogatories on behalf of a company. Under *Code of Va.* § 8.01-506(A), such summons is to be directed against "any officer of the corporation" if the company has an office in Virginia, or may be directed against "any employee of a corporation" if the company has an office but no officers in the Commonwealth.[9] There is nothing obscure here. It is plainly legally

---

[9]When an employee (not an officer) is summoned, a copy of the employee's summons is to be served on the company's registered agent so that the company may have notice of the enforcement proceedings against its assets. *See Code of Virginia* § 8.01-506(A)(iii). It is stating

impermissible and objectively unreasonable for a judgment creditor to summon a corporation's registered agent to appear for this purpose.

Given these ineluctable facts, and given that Mr. Whitten is charged with knowledge of the provisions of the Virginia Code under which he proceeded in court, it was manifestly unreasonable for him to summon Mr. Ryu to answer debtors' interrogatories on behalf of CS, and doubly so for him to have had Mr. Ryu arrested for having failed to do so.

Mr. Whitten cannot hide behind the robes of the judge who approved the *capias* based on his repeatedly incorrect representations. His posture in the matter is effectively that of a law enforcement officer seeking an arrest warrant from a magistrate: what he needed was probable cause.[10] Yet even when a warrant is issued, a subsequent lawsuit against the requesting agent can proceed when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012) (citing *Malley v Briggs,* 475 U.S. 335, 341 (1986)). A magistrate's or judge's assent, in short, does not operate as a talisman confirming probable cause or the availability of qualified immunity. A Fourth Amendment violation occurs if "a reasonably well-trained officer in [the officer's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley,* 475 US. at 345. What the Supreme Court has said of magistrates' workloads is manifestly applicable to those of general district judges as well: "[I]t is possible that a magistrate, working under docket pressures, will fail to perform as a

---

the obvious that this process does not command the registered agent to appear personally to answer the interrogatories for the company. Mr. Ryu does not complain of having been *served*.

[10]Defendants do not dispute this self-evident fact; rather, Mr. Whitten claims that he had probable cause to request the arrest of Mr. Ryu. Def. Memo at 16.

magistrate should.  We find it reasonable to require the officer applying for the warrant to

minimize this danger by exercising reasonable professional judgment."  *Id.* at 345-46.  It is

settled law that issuance of an arrest warrant is not determinative "where the warrant application

is so lacking in indicia of probable cause as to render official belief in its existence

unreasonable."  *Merchant v. Bauer*, 677 F.3d 656, 665 (4th Cir. 2012); *Rogers v. Stem*, 590

F.App'x 201, 208 (4th Cir. 2014).

In the case at hand, Whitten's unreasonable decision to apply for a warrant was further

aggravated by the misleading nature of his application with regard to who was responsible for

the conceded default and had to be called to account.  For reasons best left to him to explain –

*which he has not done* – Mr. Whitten saw fit affirmatively to identify this person as Mr. Ryu.  He

could with equal justice have named the mailman.  This state of affairs renders startlingly

apposite the findings in another Fourth Amendment case in this court turning, among other

things, on what an officer told a magistrate in order to get a warrant:

> [T]he information that [the officer] provided to the issuing magistrate was
> necessarily misleading, and the magistrate could easily have misunderstood the
> scope of the factual representations that [the officer] was making....  The
> magistrate would likely have understood [the officer] to be saying under oath that
> he had personal knowledge of facts sufficient to believe that [the crime at issue
> had been committed].  That implied representation was, at best, inherently
> misleading....  [T]he magistrate could have reasonably believed that [the officer]
> had evidence he simply did not have; and there is nothing in [the officer's]
> presentation that would have placed the magistrate on notice that he ([the officer])
> had no evidence of the required specific intent.

*Rogers v. Stem, #*1:12-cv-976 (AJT), 2013 WL 3338651 at *8 (E.D. Va. 2013).  Mr. Whitten's

presentation to the judge contained misrepresentations and omissions manifestly made with

"reckless disregard for whether they thereby made [the application] misleading," *Miller v. Prince*

*Georges Co., Md.,* 475 F.3d 621, 629 (4th Cir. 2007).  That presentation nullifies the issuance of the *capias* as cognizable evidence of probable cause or as a basis for qualified immunity.

When a warrant or *capias* is found to have been solicited on the basis of false or misleading statements or omissions that are "'material,' that is, 'necessary to the ... finding of probable cause,'" the reviewing court must then "excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." *Miller*, 475 F.3d at 628.  When Mr. Whitten's application for his *capias* is corrected in this manner, probable cause falls out of it entirely.  What emerges is an application that would have informed the judge that no officer or employee of CS had been properly served to respond to interrogatories and that one of its officers, director or employees should be so served forthwith.  Instead, to Mr. Ryu's misfortune, Mr. Whitten had him arrested.

Common sense as well as policy considerations provide incontrovertible support for Mr. Ryu's claim that his arrest was an absurd and improper overreaching under color of law.  In order to operate in this state, corporations must have registered agents.  While these can be corporate officers or directors resident in Virginia, they need not be.  *Code of Va.* §13.1-64(2).  There is an entire cottage industry of companies whose sole purpose is to provide the limited services of a registered agent under Virginia law.  (*See, e.g.,* the numerous listings that appear on line in response to <Corporate Registered Agent Services in Virginia> entered into Google.)  Defendants, who would have the court take judicial notice of Mr. Whitten's state of mind, should not oppose the court's taking notice that many of the largest corporations doing business in this

state use such services.[11]  If Mr. Whitten's blithe defense of the arrest of CS's registered agent because the company did not respond to debtors interrogatories served upon him, Opp. Mem. at 16, is accepted at face value, it is hard to see how such companies will continue being able to conduct business in this state.  Who in his or her right mind will agree to become a registered agent under such circumstances?  And is the mailman next?

Manifestly, what Mr. Whitten did was legally insupportable.  Unless he enjoys absolute or qualified immunity for his actions, he is liable for its consequences.  In fact, he enjoys neither.[12]

### 2.  Absolute Immunity Is Not Available To Mr. Whitten

For his most aggressive fallback position, Mr. Whitten argues that he should be afforded absolute immunity from §1983 liability for his misconduct.  Def. Mem. at 20.  He seeks to extend to civil county attorneys the §1983 immunity available to prosecutors in criminal proceedings.  Mr. Whitten's proposal is supported by no law whatsoever.  He cites not a single case granting absolute §1983 immunity to government lawyers in civil proceedings.  This is for good reason: diligent research has identified none.  His request for absolute immunity must be denied.

---

[11]Possibly the largest and most widely used is CT Corporation System. In due course, Mr. Ryu will publish to the court CT's boilerplate notice remitted to parties utilizing its services, to the effect that it simply forwards process or notices to its principals, and has neither the duty nor the ability to respond to legal process.  These details will figure on summary judgment, if needed.

[12]Mr. Whitten argues that his misconduct did not shock the conscience, Whitten Mem. at 17.  This contention addresses no issue in this lawsuit.  The §1983 claim in this case is for an unreasonable seizure, *i.e.,* one without probable cause, and the applicable standard is "the objective legal reasonableness of [the] official's act," *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1991).

<u>(a) Mr. Whitten is Ineligible for Absolute Immunity</u>

Mr. Whitten's request for absolute immunity fails in the first instance because he has not demonstrated and cannot demonstrate that county attorneys enjoyed a common law defense to claims of false arrest at the time §1983 was enacted, a prerequisite for invoking this defense here. As the Supreme Court explained nearly 30 years ago,

> Our initial inquiry is whether an official claiming immunity under §1983 can point to a common-law counterpart to the privilege he asserts.... If an official was accorded immunity from tort actions at common law when the Civil Rights Act was enacted in 1871, the Court next considers whether §1983's history or purposes nonetheless counsel against recognizing the same immunity in §1983 actions.

*Malley v. Briggs,* 475 U.S. 335, 339-340 (1986). The office of County Attorney was created by the General Assembly in 1968. *See, Code of Va*. §15.2-1542 (formerly §15.1-9.1:1). Inasmuch as no such position existed in 1871, it necessarily follows that no common law immunity for that position existed either. This alone is sufficient to reject Mr. Whitten's plea.

Should the court nevertheless see fit to consider defendants' absolute immunity argument, the result does not change.


<u>(b) Mr. Whitten is Not Entitled to Qualified Immunity</u>

Section 1983 exists to "give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position." *Monroe v. Pape*, 365 U.S. 167, 172 (1961). There is no language in §1983 extending immunity of any kind to anyone. The Supreme Court has long recognized that because the statute is intended to provide a cause of action for the misuse of power by those who act under color of state law, absolute immunity cannot be granted to all such officials without negating the very remedy Congress sought to

create.  *Scheuer v. Rhodes*, 416 U.S. 232, 243 (1974) (abrogated on other grounds by *Harlow, supra*.  The Court has been "quite sparing" in its  recognition of absolute immunity and has refused to extend it "further than its justification would warrant."  *Burns v. Reed*, 500 U.S. 478, 487 (1991).  An official seeking absolute immunity thus bears the heavy burden of showing that such immunity is justified for the governmental function at issue in the case.  *Id.* "We do not have a license to establish immunities from §1983 actions in the interests of what we judge to be sound public policy."  *Id.* at 493.

The Supreme Court has declined to extend absolute immunity from §1983 damage suits to most state and local officials.  *See, Wood v. Strickland*, 420 U.S. 308 (1975) (school board members); *Scheuer v. Rhodes*, *supra* (various executive officers, including the State's chief executive officer) *Pierson v. Ray*, 386 U.S. 547 (1967) (policemen).  "In light of the Supreme Court's 'quite sparing' recognition of absolute immunity to §1983 liability, we begin with the presumption that qualified rather than absolute immunity is appropriate."  *Odd v. Malone*, 538 F.3d 202, 207-08 (3d Cir. 2008) (referencing *Burns, supra*, 500 U.S. at 486-87) (prosecutors liable for securing unreasonable pre-trial incarceration of desired witnesses).[13]

Mr. Whitten likens his role in seeking a *capias* to the role of prosecutors for their actions in presenting criminal proceedings, *Imbler v. Pachtman*, 424 U.S. 409 (1976), and child social workers who are granted absolute immunity for their actions in initiating removal proceedings in

---

[13]In *Clinton v. Jones*, 520 U.S. 681 (1997), the Supreme Court held that a sitting president has no immunity from a civil claim against him for acts done before taking office and unrelated to the office.  In the instant case, Mr. Whitten's actions were concededly related to his official work. *Clinton*  – a unanimous opinion  – nevertheless serves as a cautionary warning regarding the unduly expansive interpretation of the immunities of government officials, regardless of rank.

cases of suspected child abuse, *Vosburg v. Dept. of Soc. Servs*, 884 F.2d 133, 136 (4th Cir. 1989). Def. Mem. at 20. He argues that these persons have been granted the benefit of absolute immunity because they are "integral parts of the judicial process," Whitten Memo at 20, and that his role in the civil collection of taxes (or other county civil legal work) shares this common feature, so he should be granted absolute immunity as well. There are two problems with this argument. First, it enjoys zero legal support. Notwithstanding his formidable burden to justify extending the Supreme Court's "quite sparing" use of absolute immunity, Mr. Whitten presents no case that holds what he would have this court decide. He is asking this court to sail, unguided, into uncharted waters. Second, the argument misunderstands the scope, reasoning and policy considerations underpinning the grant of absolute immunity to a prosecutor or child-seizing social worker, and burdens this principle with more weight than it can bear.

The immunity granted to prosecutors when they initiate criminal proceedings and to social workers when they initiate removal proceedings in child abuse or neglect cases is grounded in the unique and time-sensitive public safety function that these officials discharge. *Vosberg*, *supra*, at 136 (prosecutors) and 137 (social workers). The single policy consideration that "seems to pervade the analysis" of absolute immunity is that "the public interest requires decisions and action to enforce laws for the protection of the public." *Scheurer v. Rhodes*, *supra*, 416 U.S. at 241. Without minimizing the significance of government's collecting back taxes, Mr. Whitten's actions here at issue simply do not share this characteristic.

As the Fourth Circuit explained in *Vosburg*, *supra* at 136, prosecutors frequently must act under serious constraints of time and information. As a consequence, they may

> inevitably make[] many decisions that could engender colorable claims of constitutional deprivation. A prosecutor might well be reluctant to proceed with a case where there existed sharply conflicting evidence because an acquittal likely would trigger a suit against him for damages." *Id.* (internal quotation marks omitted).

The same applies to a social worker considering whether to seize an apparently endangered or neglected child. *Id.* These considerations readily suggest the need for a broad immunity freeing these officials to act decisively as needed.

Compare Mr. Whitten's role here. He was a lawyer collecting a tax debt. Defendant Treasurer Bryant has attested to the fact that she parcels out her collections work to private counsel and to the office of the county attorney. Exh. 8 at ¶6. Mr. Whitten got the CS tax case. He was not working under meaningful time constraints. CS's taxes at issue had long been in default – since 2009, in fact. He obtained a judgment in April 2013 that was good for 20 years. *Code of Va.* §8.01-251(A). He proceeded to do nothing on the case until January 2014, when he applied for a summons to answer debtors' interrogatories. He cannot and does not argue that he lacked sufficient time to determine who the officers of CS were: something at all times available on the website of the State Corporation Commission and likely in his own file. *See* Whitten Dec. at 16. He plainly knew that Mr. Ryu was the company's registered agent, and had no reason to believe that Mr. Ryu had any other position vis-a-vis the company. He had all the time he needed to read the Virginia code sections that limit the role of registered agents and define who may be served with debtors' interrogatories addressed to a company. This almost leisurely state of affairs bears little relation to the urgency under which criminal prosecutors must do their work given speedy trial considerations, and social workers must act to secure the welfare of apparently endangered children.

Another policy consideration underlying the grant of prosecutorial immunity involves fears that the ultimate fairness of the criminal justice system itself could be compromised absent such immunity.

> The focus of judges during appellate review and post conviction relief hearings potentially could be blurred by the knowledge that a post-trial decision in favor of the accused might result in the prosecutor's being called upon to respond in damages for his error or mistaken judgment. . . . Furthermore, ... the possibility of personal liability could well dampen the prosecutor's exercise of his ethical duty to bring to the attention of the court or of the proper officials [any newly discovered] evidence suggestive of innocence or mitigation, once he obtains his conviction.

*Vosberg, id.* at 136, quoting *Imbler v. Pachtman,* 424 U.S. at 427. None of these considerations is applicable to Mr. Whitten's efforts to enforce a money judgment against CS. No realistic concern arises that the ultimate fairness of the civil judgment enforcement process will be undermined were Mr. Whitten denied absolute immunity. To the contrary, the integrity of that process will be enhanced:

> It should hardly need stating that, ordinarily, liability in damages for unconstitutional or otherwise illegal conduct has the very desirable effect of deterring such conduct. Indeed, this was precisely the proposition upon which § 1983 was enacted. Absent special circumstances ... with respect to actions attacking [a prosecutor's] decision to prosecute or [his] bringing of evidence or argument to the court, one would expect that the judicial process would be protected and indeed its integrity enhanced by denial of immunity to prosecutors who engage in unconstitutional conduct.

*Imbler v. Pachtman*, 424 U.S. at 442 (1976) (White, J., concurring). "'[W]here an official could be expected to know that his conduct would violate statutory or constitutional rights, he *should* be made to hesitate.'" *Burns v. Reed*, *supra*, 500 U.S. at 495 (emphasis in original).

The state actors whose activity Mr. Whitten's actions here more closely resemble are law enforcement officers seeking a warrant. For a *capias* is simply a warrant issued by a judge from

the bench (a "bench warrant"). Like an application for a warrant, an application for a *capias* must be supported by statements from the applicant that establish probable cause to believe the accused has committed an offense to justify his arrest. The defense concedes the point, as they must. Whitten Mem. at 16. Where an application for a warrant must be made under oath, an application for a *capias* can be supported by the representation of counsel: an officer of the court operating under rules that mandate candor and responsible averments, under penalty of sanction (Fed.R.Civ.P. 11 in federal court, *Code of Va.* §8.01-271.1 in Virginia state court). A judge who need not accept counsel's arguments as an advocate is free to accept counsel's uncontested word when it comes to statements of procedural fact. This is what occurred here.

Officers who make arrests without probable cause may enjoy qualified, but not absolute, immunity. *Malley v. Briggs*, 475 U.S. 335 (1986). This has been settled law for decades. Nor can Mr. Whitten argue that his status as a county attorney makes his application for a *capias* meaningfully different from a police officer's application for a warrant for purposes of immunity. For as the Supreme Court has said, "it [is] the nature of the function performed, not the identity of the actor who perform[s] it, that inform[s] our immunity analysis." *Forrester v. White,* 484 U.S. 219, 229 (1988). Mr. Whitten's argument would also yield the incongruous result that while police officers, who do not ordinarily hold law degrees, are required on pain of possible civil liability to know and abide by clearly established law, a county attorney would not be. No court in the land has adopted such an outlandish position, and this court should not either.

### 3. <u>Qualified Immunity Should Not Be Extended to Mr. Whitten</u>

As his final fall-back, Mr. Whitten asks this court to grant him qualified immunity. This immunity protects public officials from claims of constitutional violations resulting from "reasonable mistakes as to the legality of their actions." *Saucier v. Katz,* 533 U.S. 194, 206 (2001). Qualified immunity is an affirmative defense, and the burden of establishing it rests here with Mr. Whitten. *Ridpath v. Bd. of Governors Marshall Univ*., 447 F.3d 292, 305 (4th Cir. 2006).

Qualified immunity analysis involves two inquiries. The first is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier, supra*, at 201. Here, the answer is clear. Mr. Ryu was arrested notwithstanding that he had done nothing wrong. The constitutional right to be free from unreasonable searches and seizures is well settled. "Unquestionably, [t]he Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable." *Miller v. Prince George's Cnty.,* 475 F.3d 621, 627 (4th Cir.2007).

Second, the court must consider whether the constitutional right violated "was clearly established in the specific context of the case." *Merchant*, 677 F.3d at 662. This requires the court to determine whether it would have been clear to a reasonable person that "the conduct in which he allegedly engaged was unlawful in the situation he confronted." *Figg v. Schroeder,* 312 F.3d 625, 635 (4th Cir. 2002); *Ridpath*, *supra*, at 306. A constitutional right is clearly established when "its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 313. The very action in question need not have

previously been held unlawful because a general constitutional rule already identified may apply with obvious clarity to the specific conduct in question. The salient question is whether the state of the law at the time of the events in question gave the officials "fair warning" that their conduct was unconstitutional. *Id.*

To ask that question in the context of this case is to answer it. Mr. Whitten knew that Mr. Ryu was CS's registered agent, and was aware of nothing to suggest that he was one of its officers, directors or employees (which he was not). Wrongfully and baselessly to cast Mr. Ryu as a party defendant in an action to collect taxes that were not his to pay was absurd and outrageous. Mr. Whitten at all times had access to the State Corporation Commission website that identified the corporate officers. At all times he knew, or is to be charged with knowledge of, the extremely restricted authority of corporate registered agents, and the categories of persons susceptible of being summoned to respond to debtors' interrogatories on behalf of a corporation, all set forth in the Virginia Code. On top of this open and notorious state of affairs, he had as much time as he needed to take such action as he saw fit. And finally, he is chargeable with knowledge of the need for probable cause to support an arrest, and the need to be candid and accurate with a judge, particularly when a third party's freedom is at stake. Notwithstanding, Mr. Whitten recklessly gave grossly erroneous and misleading information to the court in support of his request for a *capias* directing the arrest of Mr. Ryu, the "defendant." This by itself vitiates any possible qualified immunity defense.

Qualified immunity addresses not the defendant's good faith belief, but the "objective reasonableness" of his actions. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Henry v. Purnell*, 652 F.3d 524, 532 (4th Cir. 2011) (*en banc*). The existence of probable cause is not

measured by the "subjective belief of an individual officer." *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004). Probable cause exists "where the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a [person] of reasonable caution to have the belief that an offense has been or is being committed" by the person to be arrested. *Draper v. United States*, 358 U.S. 307, 313 (1959). What the Fourth Circuit observed in *Henry v. Purnell*, 652 F.3d 524, 535 (2011) (*en banc*), applies here word for word:

> In the end, this may be a case where an officer committed a constitutionally unreasonable seizure as a result of an unreasonable factual mistake. If he did, he is no more protected from civil liability than are the well-meaning officers who make unreasonable legal mistakes regarding the constitutionality of their conduct.

Happily, it is the great exception, not the rule, that warrants are issued when probable cause is lacking. But to say that something is an exception is to say that every now and then it happens. Within the past few years, it has happened in at least two cases in which the undersigned has represented plaintiffs in this court: *Merchant v. Bauer, supra; Rogers v. Stem, supra.* And it has happened again here. As in those cases, qualified immunity has no place.


    B. <u>Mr. Ryu States Viable State-Law Claims</u>

        1. <u>Mr. Ryu States Claims for Malicious Prosecution and False Arrest</u>

            a) <u>Malicious Prosecution</u>

To recover in an action for malicious prosecution, the plaintiff must allege and prove that "(1) the prosecution was instituted by the defendant maliciously and (2) without probable cause and (3) terminated in a manner not unfavorable to the plaintiff." *Motley v. Virginia Hardware & Mfg. Co.*, 287 F. Supp. 790, 792 (W.D. Va. 1968), citing *Wiggs v. Farmer*, 205 Vs.

149, 135 S.E.2d 829 (1964).  Malice may be inferred from the want of probable cause.  *Wiggs v. Farmer*, 205 Va. 149, 152, 135 S.E.2d 829, 831 (1964).

> Evidence tending to show lack of probable cause, or that the prosecutor failed to act as a reasonably prudent man, in instituting the prosecution, is always admissible for the purpose of proving malice; and often, when it is sufficient to prove lack of probable cause or failure to act as a reasonably prudent man, it is sufficient to warrant an inference (i.e., prove) that the prosecutor was actuated by malice. *** It is not necessary to prove actual spite, hatred, ill will, or grudge against or desire to injure the person charged with the crime.

*Freezer v. Miller*, 163 Va. 180, 204-05, 207 (1934).  Given the palpable lack of probable cause for the arrest of Mr. Ryu – effectively a courier in the matter – it is at best a jury issue whether the requisite inference of malice may be present.[14]

b) <u>False Arrest</u>

The tort of false arrest requires the restraint by one person of the physical liberty of another "without adequate legal justification."  *Montanile v. Botticelli*, No. 1:08CV716 (JCC), 2008 WL 5101775, at *4 (E.D. Va. Nov. 25, 2008) (citing *W.T. Grant Co. V. Owens*, 149 Va. 906, 921 (1928).  A plaintiff must allege that the process leading to the arrest was "unlawful," and that the arrest was made without a warrant "'regular and legal in form or regular on its face.'" *Id.,* Quoting *Motley v. Virginia Hardware & Mfg. Co.*, 287 F.Supp. 790, 792 (D.C. Va. 1968).

The *capias* is fatally confusing on its face as it confounds Mr. Ryu's status as registered agent, defendant in the tax lawsuit, respondent on the predicate interrogatories, and now intended

---

[14]In this connection it is not inconsequential that upon learning the facts from Mr. Ryu when the latter promptly responded to court following his arrest, Mr. Whitten did not undertake immediately to seek dismissal of the misguided *capias*, and instead required Mr. Ryu to drive a second time from Vienna to Front Royal to attend to the dismissal.  Mr. Whitten can explain to the jury why this was necessary.

arrestee on the *capias* itself.  Mr. Whitten's written application, approved by the judge and executed by the court clerk, was based on this confounding of roles and yielded a wholly irregular document. This course of events exemplifies the concern of the Supreme Court in *Messerschmidt v. Millender*, *supra,* citing *Malley v Briggs, supra,* to the effect that "[I]t is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should.  We find it reasonable to require the officer applying for the warrant to minimize this danger by exercising reasonable professional judgment."  *Malley, id.* at 345-46.

Contending that everything he did was fine, Mr. Whitten simply ignores the palpable irregularity of the *capias* he procured.  He avoids the fact that Mr. Ryu, recognized as registered agent, was not authorized by law to respond to the interrogatories directed to CS; avoids the fact that his motion seeking a *capias* identified The "Party to be Served" as "Michael Hyunkweon Ryu, Reg. Agent," at his Vienna law office address (Exh. 5); avoids the fact that the *capias* specifically, and absurdly, identified Mr. Ryu as the person to be taken into custody on a finding that he  – suddenly the defendant in the matter – "failed to appear after personal service." Exh. 6. If this *capias* was not unlawful and irregular, Mr. Ryu respectfully submits that no *capias* or warrant could ever serve as a predicate for a false arrest claim.

2.  Whether Mr. Whitten is Shielded by
<u>Sovereign Immunity is At Best A Jury Issue</u>

In Virginia, "a government agent entitled to the protection of sovereign immunity is not immunized from suit.  Rather, the degree of negligence which must be shown to impose liability is elevated from simple to gross negligence."  *Colby v. Boyden*, 241 Va. 125, 128, 400 S.E.2d 184, 186 (1991).  The sole issue is whether it did or did not constitute gross negligence for a

county attorney, working leisurely over a period of months, to ride roughshod over black letter

state law delimiting the functions of a registered agent and prescribing those who could be

required to respond to debtors' interrogatories addressed to a corporation, to fail to consult the

website of the State Corporation Commission to obtain garden-variety information, and without

notice or cause to cause the arrest and handcuffing in his law office of a respectable professional

trying to make a living.   By his own admission, Mr. Whitten had a law-abiding practicing

lawyer arrested and handcuffed in his own law office for the astonishing reason that he, Whitten,

*assumed* that the lawyer – Mr. Ryu – was an officer, director or employee of the defaulting

corporation.  Whitten Dec. ¶19.  Is an arrest, with all its direct and collateral consequences, a

joke or a triviality, something to be undertaken on a whim or an assumption when accurate

information is a click or phone call away?

     Manifestly, at best for Mr. Whitten, this is a jury issue.


    II.  Mr. Ryu Has Stated A §1983 Claim Against Mr. Whitten's
          Clients in The Tax Collection Lawsuit: Ms. Bryant in
          <u>Her Individual Capacity, Warren County, or Both</u>

       A.  <u>The Client(s) For Whom Mr. Whitten Acted Share(s) His §1983 Liability</u>

    Mr. Whitten's client(s) on whose behalf he had Mr. Ryu arrested are liable together with

Mr. Whitten for the damages resulting to Mr. Ryu. What is at issue here is not *respondeat*

*superior* liability but simple agency.  Mr. Whitten's clients – whether Warren County, Ms.

Bryant or (as appears, *see, e.g.,* Exh. 5) both – were the parties that moved the court, under color

of state law, for an unconstitutional *capias* for the wrongful arrest of Mr. Ryu.  The clients are

directly chargeable with the consequences of their act to this effect, not as a matter of *respondeat*

*superior*, but as a matter of agency law.  It is they who were the actual moving parties in the

Warren County General District Court.  A principal bears direct liability for the authorized

actions of its agent.[15]


### B.  Mr. Whittten Effectuated The Conceded Policy of His Client(s)

Mr. Ryu has pleaded that:

> Defendant Whitten's request for a *capias* securing the arrest of registered agent
> Michael Ryu reflected a policy in force in the county at the time to arrest the
> registered agents of companies defaulting on their taxes.  As Mr. Whitten told Mr.
> Ryu, "We do this all the time." On information and belief, and accepting Mr.
> Whitten at his word, the county and its treasurer have historically pursued, as in
> the case of Mr. Ryu, a policy of arresting a company's registered agent for the
> agent's principal's default.

Amended complaint ¶35.  Although Mr. Whitten's declaration, at ¶19, tries to take the sting out

of this accusation, at best for him the result is a factual contest, not a matter of determination as a

matter of law on a motion to dismiss.  If by policy Mr. Whitten's client did "this" or authorized

this "all the time" as Mr. Ryu alleges Mr. Whitten told him, no more is needed to hold that client

liable to Mr. Ryu under §1983.  Here again, this is a matter for discovery and either summary

judgment or trial, not a motion to dismiss as a matter of law.[16]

A final note is appropriate relative to the §1983 liability of Warren County.  As sole

---

[15]To the extent either client ends up being displeased with the result, its recourse is the
same as that available to any client ending up in difficulty because of a mistake made by counsel.
This is academic, as both clients profess agreement with and support of Mr. Whitten's actions.

[16]Defendants cite *Wright v. Fairfax County*, 2010 U.S. Dist. LEXIS 61788*13 (per
Hilton, J.) for the settled proposition that "the requirements for proof of municipal liability under
§1983 are stringent."  Indeed they are, which is why the court in *Wright* noted, *id.*,that no
relevant policy had been identified by the plaintiff "*when requested in discovery*."  And that is
the point: Mr. Ryu seeks discovery of his claim, as was afforded the plaintiffs in *Wright*.

counsel for the county on the CS tax case, Mr. Whitten served as the "policymaker" for the county for purposes of the decision to seek Mr. Ryu's arrest in the county's name. There is no doubt that the county thus stands liable under §1983 for the consequences of that decision. *Pembauer v. City of Cincinnati*, 475 U.S. 469 (1986) (city liable for single decision by county prosecutor to authorize unconstitutional entry into plaintiff's clinic).

Mr. Ryu bears no malice towards the county or its treasurer, and seeks merely to have held accountable the party or parties that successfully moved to have him arrested. Absent stipulation by the defendants, if this is not both the county and its treasurer this remains a matter to be clarified in discovery, pending which neither defendant should be dismissed. Mr. Ryu takes no position on the matter except to contend that the burdens of this lawsuit are properly to be visited not only upon Mr. Whitten, but on his client(s) for whom, and in whose name, he had Mr. Ryu arrested.

<u>Conclusion</u>

For these reasons, the court should deny defendants' motions to dismiss this lawsuit.

Respectfully submitted,

MICHAEL H. RYU,

By counsel

Dated:  May 18, 2015

Counsel for Plaintiff:


//s// Victor M. Glasberg
Victor M. Glasberg, #16184
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
(703) 684-1100 / Fax: 703-684-1104
vmg@robinhoodesq.com
RyuMichael\Pleadings\OppMTD2015-0518

---

Certificate of Service

I, Victor M. Glasberg, hereby certify that on this 18th day of May 2015, I electronically filed the foregoing Memorandum in Opposition to Defendants' Motions to Dismiss with the clerk of the court.


//s// Victor M. Glasberg
Victor M. Glasberg, #16184
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
(703) 684-1100 / Fax: 703-684-1104
vmg@robinhoodesq.com

Counsel for Plaintiff