## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | |
|---|---|
| MICHAEL H. RYU, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:15-cv-00202 |
| | ) |
| DANIEL N. WHITTEN, | ) |
| | ) |
| Defendant. | ) |
| | ) |

### MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment and Plaintiff's Partial Motion for Summary Judgment.

Plaintiff brought the instant action against Defendant for violation of the Fourth Amendment, malicious prosecution, false arrest, gross negligence, and due process violation. This Court is of the opinion that no material facts are in dispute, and summary judgment should be granted for Defendant.

Defendant has been employed by Warren County as the Assistant County Attorney since February 16, 2010. One of his duties when hired was to institute collection proceedings at the request of the Treasurer's Office for unpaid personal property taxes, business license taxes, business equipment taxes, fees,

penalties and interest, against businesses and individuals in Warren County.

The Office of the Treasurer for Warren County, led by Treasurer Wanda F. Bryant, handles tax payment receipts, maintains records regarding taxes, and her office refers cases to the Warren County Attorney's Office for collection of certain taxes, excluding real estate taxes which the Treasurer's Office refers to outside counsel.

Paula Blamer worked in the Warren County Attorney's Office from early 2007 to July of 2014. Largely, her job entailed assisting in the collection of unpaid taxes. To assist anyone who would replace her, Blamer created a list of procedures for court forms.

The Treasurer's Office began to refer tax collection matters related to unpaid personal property taxes, business license taxes, administrative fees, penalties and interest to the County Attorney's Office in approximately 2008. These taxes went unpaid and uncollected for years. Blamer worked with County Attorney Blair Mitchell, beginning in 2008, in filing the tax collection suits on behalf of the Treasurer's Office. Any bankruptcy court proceedings related to the tax collection matters were handled by the Treasurer's Office.

When Defendant was hired in 2010, the Treasurer's Office would accumulate and refer a number of tax collection matters to

the County Attorney's Office. The office would file the cases in alphabetical order, for return on one of the two assigned court hearing dates. Cases were filed in groups of 25.

In early 2013, the Treasurer's Office sent 400 tax cases to the County Attorney's Office. In an effort to collect the tax debt of CS Property on February 25, 2013, Blamer sent a letter to "C S Property Inc" [sic] informing the company that it owed Warren County $12,774.10 in unpaid taxes and fees, and that legal proceedings could be instituted if the debt was not paid by March 15, 2013. The letter was a standard form drafted before Defendant began working at the County Attorney's Office. Blamer filled in case-specific details and typed Defendant's name in the signature line.

When the debt remained unpaid, Defendant filed a Warrant in Debt returnable June 19, 2013, an Affidavit of Account, and a Military Affidavit in the GDC. The named plaintiff was "County of Warren Virginia on behalf of Wanda F. Bryant, Treasurer" and CS Property Inc. was named defendant. The warrant was personally served on Plaintiff on April 25, 2013.

Blamer was familiar with the forms she completed, not only through her work in the County Attorney's Office, but also from four years' experience as a GDC clerk. Pursuant to the GDC's instructions to Mitchell back in 2008, that registered agents had to be identified and served, Plaintiff, the registered agent

3

for CS Property, was identified. Blamer began requesting service on registered agents in 2008 when Mitchell informed her that the GDC judge dismissed cases they filed against corporations because the registered agent was not served.

Plaintiff, an attorney, has operated a law firm with his wife, also an attorney, for eight years. Plaintiff is a member of the bars of New Jersey, Virginia, Maryland, Washington, D.C., and New York. Plaintiff has handled several collections cases and remembers at least one Warrant in Debt or complaint.

Plaintiff is also admitted to the Bankruptcy Court. He has handled 94 bankruptcy cases in three states. In this capacity he met Charles and Stacy Kim, who contacted him about a personal bankruptcy matter in 2010 or 2011. Mr. and Mrs. Kim are the officers and directors of CS Property.

While the Kims' bankruptcy matter was pending, Plaintiff was asked to apply for CS Property to be reinstated with the State Corporation Commission. Plaintiff also represented CS Property in its bankruptcy case. At that time that he became its registered agent.

Plaintiff initiated the bankruptcy proceeding on May 10, 2013, after he was served with the Warrant in Debt. One of the documents he submitted to the court contained a list of CS Property's creditors, including Warren County, which he wrote was owed $12,876.22 for real estate taxes. Plaintiff believes

4

that he knew the amount from the Warrant in Debt that was served on him a few weeks earlier. Plaintiff was mistaken concerning the amount owed for real estate taxes, and he mistakenly listed the unpaid taxes as only real estate taxes in the interests of brevity. He learned of the error after his arrest the following year.

As CS Property's attorney, Plaintiff was required to render certain legal services to the corporation. These services included advising the company on all pending litigation, hearings, motions, and decisions of the bankruptcy court, communicating with creditors and all other parties in interest, and assisting the debtor in its negotiations with creditors. While he was aware of the lawsuit against CS Property filed in the GDC, Plaintiff made no attempt to contact Defendant to inform him of the bankruptcy matter and filed no suggestion in bankruptcy.

On June 19, 2013, neither Plaintiff nor anyone associated with CS Property appeared in court to respond to the Warrant in Debt. A default judgment was entered against CS Property for the full amount of the unpaid taxes. Plaintiff never investigated what happened at the hearing.

One week later, the U.S. Trustee on the bankruptcy matter filed a motion to have Plaintiff removed as CS Property's attorney due to a potential conflict of interest. On July 10,

2013, CS Property retained new counsel, who was substituted shortly thereafter.

A Notice of Chapter 11 Bankruptcy Case was sent to CS Property's creditors, including "County of Warren," in May of 2013, the addresses used (both the street and P.O. Box addresses) are for the Treasurer's Office. The County Attorney's Office address is 220 N. Commerce Avenue, Suite 100, Front Royal, Virginia. Defendant's actual office was not in the main County Attorney's Office due to insufficient space. His unnumbered office was located in the back of the building, at the opposite end from the County Attorney's Office. The Notice identified the debtor as "CS Property, Inc. dba Pioneer Motel" located at 301 Maple Ave West, Suite 620, Vienna, VA, 22180, which is Plaintiff's office address.

The Treasurer's Office did not forward copy of the Notice sent by the Bankruptcy Court to Defendant due to an error in that office's search of the debtor's (CS Property) name upon receipt. Searching under "CS Property," without a space between the "C" and "S", located only the unpaid real estate taxes, not the taxes for which collection had been referred to the County Attorney's Office. Consequently, the Treasurer's Office had no communication with anyone in the County Attorney's Office, including Defendant or Blamer, about the bankruptcy Notice.

On June 18, 2013, law firm DLA Piper forwarded to the Treasurer's Office address a motion that was filed in the Bankruptcy Court requesting relief from the automatic stay in CS Property's bankruptcy case. The County Attorney's Office was forwarded a copy of that document from another internal office on June 20, 2013, the day after the default judgment was entered. Defendant did not see that document until after this suit was filed. Blamer, upon receipt of the document, filed it but did not direct it to Defendant's attention.

CS Property's bankruptcy case was dismissed without discharge of any debts in December 2013. In January 2014, a Summons to Answer Interrogatories was issued to CS Property and the hearing was set for April 2, 2014. As with the initial Warrant in Debt, Blamer completed the summons form, listing the same individual to be served as she had on the Warrant in Debt-Plaintiff. No one from the GDC clerk's office or the court questioned why Plaintiff was named. Blamer mailed a copy of the summons to Plaintiff, and he was personally served with the summons as indicated on the summons.

Plaintiff is familiar with summonses to answer interrogatories. He is not sure that he read the language stating, "YOU MAY BE SUBJECT TO ARREST AND IMPRISONMENT UNTIL SUCH TIME AS YOU SHALL MAKE PROPER ANSWERS," when he received his summons.

After Plaintiff was served, he asked his office clerk to send copy of the summons to Mrs. Kim in Maryland. He did not consider whether the summons was served on him in error when deciding to forward it to Mrs. Kim and nothing in the summons indicated that he should forward it to anyone. He directed his clerk to inform Mrs. Kim that she had to go to court. He did not call Mrs. Kim, the court, Mrs. Kim's new attorney, or the County Attorney's Office about the summons.

Mrs. Kim does not recall whether she ever saw the summons due to the volume of paperwork she received in 2014, but recalls that a woman from Plaintiff's office told her that she was going to fax over some documents. She does not recall receiving the documents, and was not sure if the summons was among them. Mrs. Kim requires the assistance of an interpreter and is unable to fully understand written English, and no one from Plaintiff's office ever explained that she had to go to court to answer the interrogatories. The only document she recalled receiving was the Warrant in Debt.

Plaintiff failed to appear at the April 2, 2014 return date on the summons to answer interrogatories. Because of his failure to appear, on April 8, 2014, Defendant filed a Motion for Show Cause Summons or Capias. Blamer completed the form. Defendant requested a capias for Plaintiff's arrest because Plaintiff was personally served. Had there only been posted service, Defendant

would have requested a show cause instead. Defendant submitted the written request on April 8, 2014, and the capias was issued by the court on April 10, 2014.

Plaintiff was arrested on May 20, 2015, for failing to appear at the return date on the summons. Plaintiff recounts that a Vienna police officer came to his office with the warrant. When Plaintiff asserted that there was a mistake, the officer said that he had to arrest him anyway. The officer allowed Plaintiff to explain the situation to his wife and to gather checks in the event that he needed to post bond.

The magistrate released Plaintiff on an unsecured bond and informed him that the court hearing was the following day. Plaintiff was picked up by an employee in the early afternoon. He returned to work and believes he may have taken a nap and continued his casework. While Plaintiff's wrists were sore and red from handcuffs, he sought no medical attention or counseling as a result of his arrest. Plaintiff read Virginia Code § 13.1 – 1015 for the first time while researching whether a registered agent could be arrested for a corporate debt.

Plaintiff went to court the following day, and the case was continued for two weeks. After court, Plaintiff told Defendant about the bankruptcy matter. They also discussed Plaintiff's status as the registered agent for CS Property, but not an owner, officer or employee.

9

Defendant reviewed the statute and determined that he would request that the capias be dismissed. He also spoke with Michelle Frederick, the deputy treasurer responsible for bankruptcy cases, about why she had not informed his office about the bankruptcy. He learned that while she was notified of CS Property's bankruptcy, due to a typographical error in the company's name, she had not realized that the notice applied to the taxes Defendant had filed suit to collect.

In Defendant's and Blamer's experience in such tax collection matters on behalf of the Treasurer's Office, in cases in which corporations against which Warrant in Debts were filed, the registered agent was always an individual. Defendant never before encountered a situation in which a registered agent served with summons to answer interrogatories was not also an officer or owner of the corporation.

Prior to the next scheduled court date, Defendant told Plaintiff that he would request that the capias be dismissed. While Defendant contacted the court to ask whether the matter could be dismissed in advance of the court date so that Plaintiff would not have to appear, he was unable to confirm this for reasons beyond his control. The case was dismissed as requested at the next hearing.

**STANDARD OF REVIEW**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment will be granted unless "a reasonable jury could return a verdict for the nonmoving party" on the evidence presented. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An otherwise properly supported summary judgment motion will not be defeated by the existence of a dispute as to immaterial facts; only disputes over facts that might affect the outcome of the trial will properly preclude the entry of summary judgment. Id. at 248.

Plaintiff bears the initial burden of proof as to each and every element of his claims. See United States ex rel. Berge v. Bd. of Trustees of the Univ. of Alabama, 104 F.3d 1453, 1462 (4th Cir. 1997). "Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the nonmoving party's] case." Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (internal citation omitted) (internal quotation marks omitted); Hoschar v. Appalachian Power Co., 739 F.3d 163, 169 (4th Cir. 2014).

**DISCUSSION**

In the case at hand, material facts are not in dispute. Defendant is entitled to immunity in Counts I-IV, and Plaintiff failed to provide sufficient evidence for Count V, Due Process Violation. Because Plaintiff failed to sufficiently establish evidence of a county policy, practice, custom or usage, Defendant may not be held liable for Plaintiff's arrest. As a matter of law, Defendant is entitled to summary judgment on all five counts.

## 1. Defendant is Entitled to Immunity from Counts 1-4.

Summary judgment must be granted on claims I, II, III, and IV—Fourth Amendment Violation, Malicious Prosecution, False Arrest, and Gross Negligence—because Defendant is entitled to immunity.

Whitten in his individual capacity is entitled to qualified immunity at a minimum. "Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006) (internal quotation marks omitted). Government officials are entitled to the defense of qualified immunity when sued in their individual capacities unless "(1)

12

the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was of a 'clearly established' right 'of which a reasonable person would have known.'" Id.

The defense of qualified immunity is available to a defendant whose actions are found unconstitutional. Saucier v. Katz, 533 U.S. 194, 206 (2001). If there has been no violation of a constitutional right, then the defense of qualified immunity is not necessary or may not even be implicated. Id. at 201. The test is one of objective reasonableness, meaning, "[i]f officers of reasonable competence could disagree on [the] issue, immunity should be recognized." Malley v. Briggs, 475 U.S. 335, 341 (1986). "As a matter of public policy, qualified immunity provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Id. at 335. The relevant factual inquiry here is whether a reasonable assistant county attorney could have believed that his conduct was lawful. Anderson v. Creighton, 483 U.S. 635, 641 (1987). In the case at hand, Plaintiff provided no evidence on which this Court could base a belief that Defendant was unreasonable to believe his conduct was unlawful.

The record offers no evidence to support a knowing, intentional violation by Defendant of Plaintiff's clearly established constitutional rights and Plaintiff's Fourth

13

Amendment claims, including any claims for unreasonable seizure, false arrest or malicious prosecution, should be dismissed with prejudice on the grounds of Whitten's entitlement to qualified immunity. Filarsky v. Delia, 132 S. Ct. 1657, 1665-66 (2012)(court analyzed the public policy reasons for affording government workers, whether permanently or temporarily employed by the government, qualified immunity including "avoiding 'unwarranted timidity' on the part of those engaged in the public's business . . . and [e]nsuring that those who serve the government do so 'with the decisiveness and the judgment required by the public good' . . . ."). Because Defendant enjoys at least qualified immunity, summary judgment is appropriate for Defendant on Counts I-IV.

## 2. Plaintiff Fails to State a Claim for Count 5.

Plaintiff fails to state a claim or cause of action establishing municipal liability under § 1983 against Warren County, or against Defendant in his official capacity. The evidence is insufficient to establish the existence of "an official policy or custom of the municipality that proximately caused the deprivation of" Plaintiff's constitutional rights. Randall v. Prince George County, 302 F.3d 188, 203 (4th Cir. 2002). The alleged unconstitutional act must be the result of implementation or execution of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by"

14

the locality's policymaking officials. <u>Greensboro Prof. Firefighters Assoc. v. City of Greensboro</u>, 64 F.3d 962, 964 (4th Cir. 1995). Liability must be based on "a municipal act" as opposed to the act or actions of municipal employees; a locality may be liable only where a final decision by an employee "implements municipal policy." <u>Id.</u> at 965 (emphasis added).

The County Attorney's Office and, therefore, Defendant, were acting on behalf of Bryant, the Treasurer, in pursuing tax collection proceedings against CS Property. No Warren County policy or custom is implicated in this case. Neither the County Attorney nor Defendant are "policymakers" as recognized under Virginia law for Warren County. Any policy, custom, (or even a "practice" as Plaintiff attempts to expand the relevant inquiry), must have been promulgated, countenanced, or sanctioned by the County Board of Supervisors of Warren County, the County's policy making officials as recognized under Virginia law (state and local law). The County Attorney's Office is not a separate, legally recognized, policy-making body, independent of the County Board of Supervisors. Va. Code § 15.2-1542. <u>City of Virginia Beach v. Hay</u>, 258 Va. 217, 221-22 (1999).

Plaintiff's Third Complaint alleges that Defendant acted "in his individual capacity and, on Counts I and V, also in his official capacity." A lawsuit against an individual in his official capacity is an action against the municipality. <u>See</u>

<u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." <u>Id.</u> at 165-66 (quoting <u>Monell v. New York City Dep't.</u>, 436 U.S. 658, 690 n.55 (1978)). Thus, the attempted claim against Defendant must fail because the true party of interest, if a municipal liability claim existed in this case, is the Treasurer—not even Warren County, against whom all claims were previously dismissed based on Eleventh Amendment immunity, and Warren County has no municipal liability to Plaintiff.

Inasmuch as Plaintiff stated no claim against either the Treasurer or Warren County, any official capacity claim against Defendant should be dismissed, which was previously affirmed by the Court in dismissing the official capacity claim attempted in Plaintiff's Amended Complaint.

Finally, claiming that a template created by the office paralegal for instructions on how to pursue tax collection proceedings against companies located in Warren County, is a "municipal policy" created to hold registered agents liable for corporate debts, has no support in the evidence or in law. In point of fact, Plaintiff was not only the registered agent for CS Property but also the company's and the officers' counsel for a number of years, going back to 2011. It should not be ignored

16

that throughout the bankruptcy pleadings, even after Plaintiff
was replaced as counsel, an address identified for CS Property
and its officer Stacy Kim is Plaintiff's Vienna office located at
301 Maple Avenue, Suite 620, Vienna, VA 22180.

Plaintiff's submission of costs and fees to the Bankruptcy
Court demonstrate that he engaged no work on behalf of CS
Property related to tax collection, regardless of his previously
filed pleading in the Bankruptcy Court stating that the duties in
which he was engaged included dealing with creditors.

By the same standard, Plaintiff's Partial Motion for
Summary Judgment must be denied.


**Conclusion**

Seeing that material facts are not in dispute, Defendant's
Motion for Summary Judgment should be granted, and Plaintiff's
Partial Motion for Summary Judgment should be denied. An
appropriate order shall issue.


CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
April 4, 2016

17